# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CHRISTEN J. PETERSEN,**

    **Plaintiff,**

**v.**                                                                    **Case No: 6:22-cv-1491-PRL**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

___

### ORDER

Plaintiff appeals the administrative decision denying his application for Child Disability Benefits and Supplemental Security Income. Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is due to be **AFFIRMED.**

**I.  Background**

For the sake of convenience, the administrative history, which is not in dispute, is copied from the government's brief:

> On July 9, 2020, Plaintiff filed applications for Child Disability Benefits (DIB) and Supplemental Security Income (SSI), alleging disability beginning February 28, 2016 (Tr. 155, 167-68, 281, 285). An administrative hearing was held on November 4, 2021, and the administrative law judge (ALJ) subsequently issued an unfavorable decision on March 18, 2022 (Tr. 15-29, 66-93). Because the Appeals Council denied Plaintiff's request for review (Tr. 1-3), this Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

(Doc. 22 at 1-2).[1]

___

[1] For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source

Plaintiff was 18 years old on February 28, 2016, his alleged disability onset date, and 23 years old at the time of the hearing before the Administrative Law Judge. (Tr. 72, 168). Plaintiff completed some college courses and has past work experience as a cashier, pizza maker, sales associate, and warehouse worker. (Tr. 308). Based on a review of the record, the ALJ found that Plaintiff had the severe impairments of autism spectrum disorder, ADHD, and major depressive disorder. (Tr. 18).

The ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> Only perform simple routine repetitive tasks, with no forced pace or assembly line pace tasks; only occasional superficial interaction with the general public, coworkers and supervisors, and; he should not work in coordination or in close proximity to others.

(Tr. 21).

Based upon the RFC, and considering the testimony of the vocational expert, the ALJ found that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, such as the positions of linen room attendant, industrial cleaner, and laundry laborer. (Tr. 28). Consequently, the ALJ found that Plaintiff was not disabled from the potential onset date through the date of decision. (Tr. 28).

---

opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions.").

## II. Standard of Review

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ properly considered the factors of supportability and consistency when considering a medical opinion; and (2) whether the ALJ erred in relying on the testimony of the vocational expert.

*1.     The ALJ's Consideration of the Medical Opinion of Dr. Khan.*

The Court first turns to Plaintiff's argument that the ALJ erred in considering a medical opinion. Plaintiff specifically argues that the ALJ failed to adequately analyze the factor of supportability when considering the opinion of Dr. Khan.

As a preliminary matter, Plaintiff acknowledges that his claim is subject to a new regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). In this case, Plaintiff filed his application in 2020, thus the new rules apply.

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised

regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence, (4) evidence from nonmedical sources; and (5) prior administrative medical findings. See 20 C.F.R. § 416.913(a)(2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co- workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2) (2017).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 416.920c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give

any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 416.920c(c)(1)-(5).

Turning to Plaintiff's argument, Mohamed Khan, Psy.D., evaluated Plaintiff in 2016 for personality, learning disability, and adaptive functioning assessments. (Tr. 872). On August 3, 2021, Dr. Khan evaluated Plaintiff again for an updated psychological assessment. (Tr. 999). During the updated assessment, Dr. Kahn opined that Plaintiff had unlimited or very good ability to understand, remember, and carry out very short and simple instructions or detailed instructions, make simple work-related decisions, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions. (Tr. 1013-14). Dr. Kahn opined that Plaintiff had limited, but satisfactory ability to remember work-like procedures, sustain an ordinary routine without special supervision, perform at a consistent pace, accept instruction and respond appropriately to criticism from supervisors, and get along with coworkers or peers. (Tr. 1013-14). Meanwhile, Dr. Kahn opined Plaintiff was "seriously limited" in his ability to maintain attention for two-hour segments, maintain regular attendance and be punctual, work in coordination with or proximity to others, complete a normal workday and workweek, deal with normal work stress, interact appropriately with the general public, and maintain socially appropriate behavior. (Tr. 1013-

14). Dr. Khan also opined that Plaintiff would be absent from work more than four days per month due to his impairments or treatment. (Tr. 1014).

In her opinion, the ALJ devotes at least seven full paragraphs to discussing Dr. Khan's opinion and findings. (Tr. 22-26). Ultimately, the ALJ stated that she found Dr. Kahn's opinions "mostly persuasive and consistent with" his prior evaluations of Plaintiff. (Tr. 26). The ALJ stated, "[e]xcept for work beyond the simple level and the absences from work, the undersigned finds Dr. Kahn's assessment mostly persuasive. . ." (Tr. 26). To summarize, the ALJ generally credited Dr. Kahn's opinion, but did not find it persuasive to the extent that Dr. Kahn opined Plaintiff could perform work beyond the simple level and would be absent more than four days per month. (Tr. 26).

The ALJ expressly explained how she arrived at the RFC, noting that "no medical source, including Dr. Kahn, assessed a complete inability to interact with others or maintain attention/concentration for simple tasks." (Tr. 26). The ALJ also noted that, while Dr. Kahn made recommendations to improve Plaintiff's success in all aspects of his life, Plaintiff did not take advantage of disability services offered in his college setting. (Tr. 26). The ALJ also noted Plaintiff's history of intelligence test scores in the average range. (Tr. 23). The ALJ expressly stated that the RFC was supported by Plaintiff's ability to interact appropriately with unfamiliar medical sources, have friends and interests, his absence of mental health treatment, no psychiatric hospitalizations aside from a short stay in 2017, Plaintiff's education history, some work activities, his history of living on his own, and the medical record as a whole. (Tr. 27). In other words, the ALJ explained in considerable detail the extent to which she found Dr. Kahn's opinion supportable (and the aspects she found less supportable) in light of the objective medical evidence and the explanations presented by Dr. Kahn.

Plaintiff argues that the ALJ erred by not including most of Dr. Khan's opinion in the RFC. Plaintiff also contends that the ALJ erred by failing to address the explanations presented by Dr. Kahn, and for failing to include Dr. Kahn's recommendation for a job coach in the RFC. Plaintiff contends that the "failure to explain how presented support was considered is an error of law," and cites *Pierson v. Comm'r of Soc. Sec.*, No. 6-19-cv-1515-RBD-DCI, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020) ("As an initial matter, the new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous."), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020). (Doc. 19 at 17).

Plaintiff's argument mischaracterizes the Court's reasoning in *Pierson* and assumes the regulations require the ALJ to specifically address each of the explanations presented by the medical source. (Doc. 19 at 18). Plaintiff's argument assumes that the ALJ was required to specifically address each and every limitation opined by Dr. Kahn and explain why it was or was not included in the RFC. For example, Plaintiff contends that the ALJ erred by finding Dr. Kahn's opinion mostly persuasive, "yet did not explain why the limitations were not included in the RFC." (Doc. 23 at 3). As explained below, Plaintiff's argument is misplaced.

The Court finds that the ALJ properly considered Dr. Khan's opinion in view of the relevant factors, including supportability and consistency. The ALJ extensively discussed the opinion in connection with the rest of the evidence and expressly explained how she arrived at the RFC. The ALJ specifically explained that Plaintiff had engaged in work activities involving customer service and attended college, activities that required socialization with people. (Tr. 24). Nonetheless, the ALJ's RFC accounted for significant limitations in social interactions. The ALJ specifically noted that Dr. Kahn's 2021 evaluation was "more reflective

of marked rather than moderate limitations in social interactions." (Tr. 25). Thus, the RFC provided for "only occasional superficial interactions with the general public, coworkers and supervisors, and he should not work in coordination or in close proximity to others." (Tr. 21).

The ALJ is required "to consider all of the medical and other evidence of record[.]" *Ramos v. Comm'r of Soc. Sec.*, 2021 WL 960688, at *6 (M.D. Fla. Mar. 15, 2021). Importantly, the ALJ is not required to use "magic words in a claimant's RFC assessment." *Carbone v. Comm'r of Soc. Sec.*, 2017 WL 1476283, at * 3 (M.D. Fla. Mar. 3, 2017). Further, "there is no requirement that the ALJ include every limitation [from a physician's opinion] verbatim" into an RFC determination. *Hilton v. Comm'r Soc. Sec.*, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (noting that the ALJ is not required "to specifically address every aspect of an opinion or every piece of evidence in the record"). And, as Defendant argues, "contrary to Plaintiff's supposition, the regulations themselves do not even state that an ALJ is required to address the objective medical evidence and supporting explanations when discussing supportability." (Doc. 22 at 19).

Likewise, the ALJ was not required to include Dr. Kahn's recommendation for a job coach in the RFC. The need for a job coach is not a factor to be included in the RFC because it is not a statement about what the claimant can do despite his impairments. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Further, as explained above, the ALJ was not required to include every aspect of Dr. Kahn's opinion in the RFC even though he found the opinion mostly persuasive.

The undersigned finds that the ALJ's decision and RFC determination was based on substantial evidence. In reaching her decision, in addition to the evidence discussed above, the ALJ also credited evaluations performed by Dr. Eyring, as well as the opinions of the state

agency psychological consultant. (Tr. 23, 24). The state agency consultant opined that Plaintiff had no significant difficulty recalling, understanding, and carrying out complex instructions or adapting to workplace changes or stress, was capable of simple instructions, and had moderate difficulty maintaining concentration for extended periods of time and in acting appropriately with others. (Tr. 24, 162-64). At the reconsideration level, the state agency consultant found that Plaintiff was able to understand and remember very short and simple instructions as well as simple work locations and procedures, maintain attention and concentration for two hour periods over an eight hour work day, function best with tasks in a modest or low demand work setting, and respond appropriately to changes in the work setting with limited social interaction. (Tr. 24, 181-85, 202-06). The ALJ also credited the opinion of Dr. Buggia, who opined that Plaintiff was capable of desk work and handling paperwork, documents, working on a computer and talking on the phone, and had no physical limitations. (Tr. 25, 996).

Further, the ALJ relied upon Plaintiff's daily activities and other evidence, including that Plaintiff graduated high school and attended some college. (Tr. 27, 308). He stated that he had friends, both in-person and online, and that he was capable of performing activities such as vacuuming, washing dishes, playing video games, reading, and 3D printing. (Tr. 26, 972).

The record reflects that the ALJ properly considered Dr. Kahn's opinion in light of the relevant factors, including supportability and consistency. Under the revised regulations, the ALJ was not required to give deference to the opinion. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's

treating source or explain why good cause exists to disregard the treating source's opinion."). Also, contrary to Plaintiff's argument, the ALJ was not required to specifically address every aspect of Dr. Kahn's opinion. *Coley*, 771 F. App'x at 917. Further, substantial evidence supports the ALJ's decision and the RFC finding. Accordingly, the ALJ did not err in considering the opinion of Dr. Kahn.

2. *The ALJ's Consideration of the Vocational Expert Testimony*

Next, Plaintiff argues that the ALJ erred in making the finding at Step Five because the ALJ relied on vocational witness testimony based on an incomplete hypothetical. Plaintiff appears to acknowledge that the ALJ posed a hypothetical question that mirrored the RFC finding. (Doc. 19 at 14). Yet, Plaintiff points out that Dr. Kahn opined that Plaintiff was seriously limited in various areas, including completing a normal workday or workweek and maintaining regular attendance. Plaintiff argues that the ALJ's finding of no disability was not based on substantial evidence because the ALJ assumed that the hypothetical worker could perform his duties despite being off-task 11-20 percent of the workday as would correlate with serious limitations in that area.

Plaintiff's argument is premised on the assumption that the ALJ assigned an RFC to Plaintiff that failed to include the relevant limitations regarding regular attendance or being off-task as opined by Dr. Kahn. As explained above, that argument is unavailing. It is apparent that the ALJ's decision thoroughly considered Plaintiff's condition as a whole, and as observed above, substantial evidence supports the ALJs findings regarding Plaintiff's RFC. The ALJ's RFC assessment need not mirror the opinion of any doctor, nor was he required to adopt all of the limitations the doctors assessed. *See Castle v. Colvin*, 557 F.App'x, 849, 853 (11th Cir. 2014). Here, the ALJ presented a thorough, comprehensive hypothetical to the

vocational expert that specifically identified the limitations consistent with Plaintiff's RFC. (Tr. 89). The vocational expert's testimony regarding the jobs that a person with Plaintiff's RFC could perform given those limitations constituted substantial evidence upon which the ALJ could rely. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is not required to include findings in the hypothetical that she had properly rejected as unsupported. *Crawford* v. *Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's findings, the RFC determination, and the conclusion that the Plaintiff was not disabled. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

### IV. Conclusion

For the reasons stated above, the ALJ'S decision is AFFIRMED under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE** and **ORDERED** in Ocala, Florida on September 15, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties